Appeal Nos. 21-35881, 21-35899, 22-35061

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

PUGET SOUNDKEEPER ALLIANCE,

*Plaintiff-Appellant/Cross-Appellee*,

v.

PORT OF TACOMA; SSA TERMINALS, LLC;
SSA TERMINALS (TACOMA), LLC; SSA MARINE, INC.,

*Defendants-Appellees/Cross-Appellants*.

---

On Appeal from the United States District Court
for the Western District of Washington
No. 3:17-cv-05016-BHS; Hon. Benjamin H. Settle

---

# APPELLEE/CROSS-APPELLANT PORT OF TACOMA'S
# SUPPLEMENTAL BRIEF

---

Bradford Doll, WSBA No. 38479
Lynne M. Cohee, WSBA No. 18496
James A. Tupper, Jr. WSBA No. 16873
Hayley Ventoza, WSBA No. 46306
Tupper Mack Wells PLLC
2025 First Avenue, Suite 1100
Seattle, WA 98121
Telephone: (206) 493-2300
*Attorneys for Appellee/Cross-Appellant
Port of Tacoma*

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS...........................................................................ii

TABLE OF AUTHORITIES ..................................................................iii

INTRODUCTION ..................................................................................1

ARGUMENT ..........................................................................................2

    I.    ANSWER TO COURT'S ISSUE NO. 1................................................2

    II.    ANSWER TO COURT'S ISSUE NO. 2................................................9

    III.    ANSWER TO COURT'S ISSUE NO. 3..............................................19

CONCLUSION........................................................................................22

Form 8. Certificate of Compliance for Briefs.......................................... A-1

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*ASARCO, Inc. v. Air Quality Coalition*,
92 Wash.2d 685, 601 P.2d 501 (1979) ........................................................18

*Atl. States Legal Found., Inc. v. Eastman Kodak Co.*,
12 F.3d 353 (2d. Cir. 1993) (as amended, *cert. denied*
115 S.Ct. 62, 513 U.S. 811, 130 L.Ed.2d 19)................................................8, 9

*Bock v. State*,
91 Wash.2d 94, 586 P.2d 1173 (1973) .......................................................14

*Brownfield v. City of Yakima*,
178 Wash. App. 850, 316 P.3d 529 (2014) .................................................14

*Christensen v. Grant Cty. Hosp. Dist. No. 1*,
152 Wash.2d 299, 96 P.3d 957 (2004) .......................................... 10, 11, 15

*City of Seattle v. Dep't of Ecology*,
37 Wash. App. 819, 683 P.2d 244 (1984) ...................................................18

*Clements v. Airport Auth. of Washoe Cty*,
69 F.3d 321 (9th Cir. 1995).........................................................................22

*Ervco, Inc. v. Texaco Ref. and Mktg., Inc. v.*,
428 Fed. Appx. 725 (2011) ..........................................................................22

*Friends of the Earth v. Hall*,
693 F. Supp. 904 (W.D. Wash. 1988) ..........................................................16

*General Motors Corp. v. EPA*,
168 F.3d 1377 (D.C. Cir. 1999)..................................................................4, 5

*In re Bayer Cropscience LP*, 17 E.A.D. 228; 2016 WL 4125892,
Final Decision and Order (E.A.D. July 29, 2016).........................................7

*Lejeune v. Clallam Cty.*,
64 Wash. App. 257, 823 P.2d 1144 (1992) .................................................14

*Lighthouse Res., Inc. v. Inslee*, No. 3:18-cv-05005-RJB,
2019 WL 1572605 (W.D. Wash. April 11, 2019)........................................16

*Miller v. Cty. of Santa Cruz*,
39 F.3d 1030 (9th Cir. 1994) ................................................................ 10, 17

*Miller v. Fairchild Indus., Inc.*,
    797 F.2d 727 (9th Cir. 1986) ........................................................................21

*Monzon v. City of Murrieta*,
    978 F.3d 1150 (9th Cir. 2020) ....................................................................21

*Nielson v. Spanaway Gen. Med. Clinic, Inc.*,
    135 Wash.2d 255, 956 P.2d 312 (1998) ............................................... 11, 14

*Ohio Valley Envtl. Coal. v. Apogee Coal Mining Co., LLC*,
    531 F.Supp.2d 747 (S.D. W.Va. 2008) ........................................................3

*Ohio Valley Envtl. Coal. v. Fola Coal Co., LLC*, No. CV 2:13-16044,
    2015 WL 13731915 (S.D.W. Va. May 29, 2015) ....................................5, 6

*Ohio Valley Envtl. Coal., Inc. v. Fola Coal Co., LLC*, No. 2:12-3750,
    2013 WL 6709957 (S.D. W.Va. Dec. 19, 2013) ...........................................7

*Phillips 66 Co. v. Sacks*,
    409 F. Supp.3d 972 (W. D. Wash. 2019) ...................................................14

*Port of Seattle v. Pollution Control Hearings Bd.*,
    151 Wash.2d 568, 90 P.3d 659 (2004) ................................................ 16, 18

*Postema v. Pollution Control Hearings Bd*.,
    142 Wash.2d 68, 11 P.3d 726 (2000) ........................................................18

*Pub. Interest Research Grp. v. Powell Duffryn Terminals*,
    913 F.2d 64 (3d Cir. 1990) ..........................................................................7

*Puget Soundkeeper All., et. al. v. Dep't of Ecology*, PCHB No. 19-089c,
    Order on Summ. J., 2021 WL 1163243 (Mar. 23, 2021) ............. 9, 12, 13, 14

*Reninger v. State Dep't of Corr.*,
    134 Wash.2d 437, 951 P.2d 782 (1998) ............................................... 11, 15

*Rosemere Neighborhood Ass'n v. Clark Cty*,
    170 Wash. App. 859, 290 P.3d 142 (2012) ................................................16

*Sharemaster v. U.S. Sec. & Exch. Comm'n*,
    847 F.3d 1059 (9th Cir. 2017) ....................................................................22

*Snohomish Cty v. Pollution Control Hearings Bd*.,
    187 Wash.2d 346, 386 P.3d 1064 (2016) ..................................................18

*State ex rel. Martin Marietta Aluminum, Inc. v. Woodward*,
    84 Wash.2d 329, 525 P.2d 247 (1974) ................................................. 15, 18

iv

*States v. Utah Constr. & Mining*,
384 U.S. 394 (1966)............................................................... 10, 11

*U.S. Dep't of Energy v. Ohio,*
503 U.S. 607 (1992)...................................................................4, 8

*U.S. v. Cotterman*,
709 F.3d 952 (9th Cir. 2013)..............................................22

*United States v. Green*,
940 F.3d 1038 (9th Cir. 2019)............................................22

*United States v. Gulf Coast Steel, Inc.*,
54 F. Supp. 2d 1233 (N.D. Ala. 1999) ..............................7

*United States v. Ullah*,
976 F.2d 509 (9th Cir. 1992).............................................21

*Wash. State Dairy Fed. v. State*,
18 Wash. App. 2d 259, 490 P.3d 290 (2021) ..................18

*Waste Action Project v. Astro Auto Wrecking, LLC*,
2016 WL 7103414 (W.D. Wash. Dec. 6, 2016) ..............7

*Weaver v. City of Everett*,
194 Wash.2d 464, 450 P.3d 177 (2019) ..........................15

*Wis. Res. Prot. Council, Ctr. for Biological Diversity v. Flambeau Mining Co.*,
903 F. Supp. 2d 690 (W.D. Wis. 2012)............................6

**Statutes**

28 U.S.C. § 1738 ..................................................................10

33 U.S.C. § 1342 ...............................................................3, 8

33 U.S.C. § 1342(h) ..............................................................8

33 U.S.C. § 1342(p)(2)(E) ....................................................3

33 U.S.C. § 1342(p)(6).........................................................5

33 U.S.C. § 1365 ...............................................................4, 5

33 U.S.C. § 1365(f)(7) .........................................................3

RCW Ch. 34.05 ...................................................................14

v

RCW 34.05.514.................................................................................14

RCW 34.05.518.................................................................................14

RCW 34.05.570(3) ...................................................................... 14, 18

RCW 43.21B.010...............................................................................15

RCW 43.21B.020...............................................................................17

RCW 43.21B.030...............................................................................17

RCW 43.21B.060...............................................................................17

RCW 43.21B.110(1)(c)......................................................................16

RCW 43.21B.180...................................................................... 14, 18

RCW 43.21B.230...............................................................................16

**Regulations**

40 C.F.R. § 122.26(b)(14)(i)-(viii) ..................................................12

40 C.F.R. § 122.26(b)(14)(i-ix and xi) .............................................12

40 C.F.R. § 122.26(b)(14)(i-xi) ........................................................13

40 C.F.R. § 122.26(b)(14)(viii)....................................................2, 12

40 C.F.R. § 122.26(b)(14)(ix)-(xi) ...................................................12

40 C.F.R. § 122.44(d)(ii) ....................................................................7

40 C.F.R. § 123.1(i) .............................................................................5

40 C.F.R. § 123.1(i)(2)......................................................................3, 8

40 C.F.R. § 123.62 ..............................................................................6

40 C.F.R. § 123.62(a)..........................................................................6

40 C.F.R. § 123.62(b)(4).....................................................................6

WAC 173-220-060(1)(a)-(e).................................................................7

WAC 371-08-300.................................................................................16

WAC 371-08-315 ................................................................................16

WAC 371-08-470 ................................................................................16

WAC 371-08-475 ................................................................................16

WAC 371-08-485(1) ...........................................................................16

WAC 371-08-540 ................................................................................16

**Other Authorities**

64 Fed. Reg. 68722-851 (Dec. 8, 1999)................................................5

71 Fed. Reg. 33628-640 (June 12, 2006)..............................................3

S.Rep. No. 92-414 (1971) .....................................................................5

**INTRODUCTION**

This Court has requested supplemental briefing on the following three issues. Dkt. 74.

Regarding Issue 1: the Port of Tacoma ("Port") is *not* collaterally challenging a decision reserved to a state tribunal. In the absence of a residual designation of discharges previously exempted from EPA's "only those portions" definition, and express EPA approval of a modified state NPDES program, the Port had no opportunity to challenge a modification of the Industrial Stormwater General Permit ("ISGP").

Regarding Issue 2: Because the Pollution Control Hearings Board ("PCHB") decision regarding the scope of the 2020 ISGP addressed the same legal issue before this Court, the decision should be given preclusive effect under the doctrine of "issue preclusion." If this Court chooses not to give the Board's ruling preclusive effect, it should still defer to the PCHB's reasoning.

Regarding Issue 3: this Court may consider any arguments made by the Port in this supplemental brief not previously presented to the district court or this Court under the "no prejudice" exception to the waiver of issues rule.

**ARGUMENT**

## I.     ANSWER TO COURT'S ISSUE NO. 1

This Court need not consider whether Ecology failed to take the necessary steps to expand on federal NPDES permit coverage requirements for transportation facilities. As the district court held, the 2010 ISGP—the permit that the Washington Department of Ecology claimed expanded the scope of coverage at transportation facilities—uses clear, unambiguous language to incorporate EPA's "only those portions" definition of the activities associated with industrial activity; explains that Table 1 lists EPA's categories of industrial activities "in a different format"; and defines the term "Facility" as the point sources subject to the NPDES program. 1-ER-68; 1-ER-70; 1-ER-57; Dkt. 25 at 28-35. *See* 40 C.F.R. § 122.26(b)(14)(viii). The ISGP regulates only point sources at transportation facilities already regulated under EPA's definition.

If, however, the Court interprets the ISGP as regulating stormwater runoff from the container-handling activities on the West Sitcum Terminal's wharf— activities all the parties agree is clearly excluded in the EPA definition incorporated in the ISGP—then the Court should consider the Port's argument that Ecology did not expand the NPDES program. Dkt. 25 at 56-59. The argument is not a collateral challenge because Ecology failed both to provide any public notice of a residual designation and to seek EPA approval to expand the NPDES program.

Federal courts do not apply the collateral attack doctrine where there was no notice of the purported permit change. *See Ohio Valley Envtl. Coal. v. Apogee Coal Mining Co., LLC*, 531 F.Supp.2d 747, 753-55 (S.D. W.Va. 2008). Without notice, the "ability to challenge the modification through state administrative channels [is] effectively eliminated." *Id*. at 755.

PSA asserts that the 2010 ISGP expanded the ISGP's scope of coverage to the entirety of the state's transportation facilities, and, therefore, constitutes a permit or condition "issued under" section 1342 of the Clean Water Act (CWA). 33 U.S.C. § 1365(f)(7). The assertion is inconsistent with the CWA and the administrative record. A 33 U.S.C. § 1342(p)(2)(E) residual designation requires both a record showing that Ecology in fact made such a designation as well as EPA's express approval of an expansion of the state's NPDES program. The failure to take the formal steps required by the CWA and NPDES permit regulations means any expansion does not arise "under section 1342" and is not enforceable in a CWA citizen suit: "If an approved State program has greater scope of coverage than required by Federal law the additional coverage is not part of the Federally approved program." 40 C.F.R. § 123.1(i)(2); *see also* 71 Fed. Reg. 33628-40, 33635 (June 12, 2006) ("[I]f a State, Tribe, or local government were to require a permit for discharges exempt from the Clean Water Act NPDES program requirements, those permit requirements would not be considered part of an

3

NPDES program."). And if state requirements are not part of an approved NPDES program, they are not enforceable "under" CWA section 1365. *See, e.g., U.S. Dep't of Energy v. Ohio,* 503 U.S. 607, 624-26 (1992) (modifying phrase "arising under" federal law *excludes* instances where the plaintiff is relying on state law "even when the State's exercise of power in the particular circumstances is expressly permitted by federal law") (internal citations omitted).

The Port is not barred from raising this issue because Ecology never formally expanded coverage requirements for transportation facilities. An argument is reserved to state tribunals and immune from collateral challenge only when a party seeks to invalidate a condition plainly expressed in a state-issued NPDES permit that was developed through administrative standard-setting procedures and capable of timely appeal in a state forum. In *General Motors Corp. v. EPA*, 168 F.3d 1377, 1382 (D.C. Cir. 1999), for example, General Motors had attempted to comply with numeric limitations in its Michigan-issued NPDES permit but still exceeded the permit limitations. *Id*. at 1379. After EPA filed an administrative complaint, General Motors claimed the numeric limitations were invalid. The D.C. Circuit rejected this argument, finding General Motors' failure to challenge its NPDES permit within 60 days of its issuance prevented the company from mounting a collateral attack upon the permit in the course of the EPA enforcement action and "precluding collateral attacks ensures that the States [have]

4

the opportunity as a threshold matter to address objections to the permits they

issue." *Id*. at 1382.

The *General Motors* court was also concerned about the inefficiency of

having EPA defend a state-issued NPDES permit, noting that the state would have

the information pertinent to its decision-making process, not the EPA. *Id*. The

court further noted that asking EPA to defend the permit's scope would force EPA

to second-guess the state agency that issued the permit, and the court sought to

ensure EPA enforcement actions were based on relatively narrow factual

situations. *Id*. at 1383 (citing S.Rep. No. 92-414, at 64 (1971)).

The *General Motors* court's concern about ensuring that states can address

objections to plainly expressed requirements of state-issued permits is not

implicated here. To regulate an exempt discharge under the federally approved

program—and thereby allow enforcement under section 1365—the state must

"designate" the discharge. 33 U.S.C. § 1342(p)(6). If it does not, the state's

regulation remains "greater in scope of coverage" and not subject to section 1365.

64 Fed. Reg. 68722-851, 68781 (Dec. 8, 1999); *see also* 40 C.F.R. § 123.1(i). And

a residual designation must be based on a clear and unambiguous statement in the

publicly available administrative record. Dkt. 25 at 47-48. EPA approval of the

ISGP does not signal EPA awareness or approval of a change in the state's NPDES

program. *See Ohio Valley Envtl. Coal. v. Fola Coal Co., LLC,* No. CV 2:13-16044,

5

2015 WL 13731915, at *9 (S.D.W. Va. May 29, 2015) ("[T]here is no evidence that the EPA has approved NPDES program changes… and such changes therefore have no effect under federal law."); *Wis. Res. Prot. Council, Ctr. for Biological Diversity v. Flambeau Mining Co.*, 903 F. Supp. 2d 690, 718 (W.D. Wis. 2012) ("40 C.F.R. § 123.62 requires explicit approval, not lack of disapproval."). Here, there is nothing in the 2010 or 2015 ISGP administrative records identifying a residual designation.

In addition to residual designation, for the defendants to be collaterally barred from raising this issue, the administrative record for the 2010 ISGP would also need to include evidence of Ecology seeking and receiving EPA approval to modify the state's NPDES program. 40 C.F.R. § 123.62(a), (b)(4). Here, nothing in the administrative record shows Ecology explicitly asked for or received EPA approval to expand the state's NPDES program.

Furthermore, the public administrative record for the 2010 ISGP would include objective disclosure that stormwater runoff from areas used only for loading shipping containers is now regulated, if the scope of the permit had in fact been expanded at transportation facilities. It does not. For example, an NPDES permit Fact Sheet, which always accompanies an NPDES permit, includes a description of "[t]he type of facility or activity which is the subject of the application," and "[t]he legal and technical grounds for the draft permit

6

determination." WAC 173-220-060(1)(a)-(e); *see also* 40 C.F.R. § 122.44(d)(ii)

(requiring "reasonable potential" determination). The Fact Sheets for the 2010 and

2015 ISGPs contain no mention of expanding coverage at transportation facilities,

let alone a residual designation.

The collateral attack cases cited by PSA in its district court briefing are

inapposite. Each involves a defendant who failed to challenge a condition plainly

expressed in a permit. *Ohio Valley Envtl. Coal., Inc. v. Fola Coal Co., LLC*, No.

2:12-3750, 2013 WL 6709957, *12 (S.D. W.Va. Dec. 19, 2013) (permit condition

at issue was a rule plainly expressed in the permit); *Waste Action Project v. Astro*

*Auto Wrecking, LLC*, 2016 WL 7103414, *4 (W.D. Wash. Dec. 6, 2016)

(unpublished) (defendant could not challenge permit after withdrawing

administrative challenge to coverage); *Pub. Interest Research Grp. v. Powell*

*Duffryn Terminals*, 913 F.2d 64, 77-78 (3d Cir. 1990) (defendant could not

challenge BOD and TSS limits appearing in successive permits); *In re Bayer*

*Cropscience LP*, 17 E.A.D. 228; 2016 WL 4125892, *33-34, Final Decision and

Order (E.A.D. July 29, 2016); (Federal Insecticide, Fungicide, and Rodenticide Act

registrants could not challenge registration conditions in FIFRA section 6(e)

hearing after acknowledging the conditions by letter); *United States v. Gulf Coast*

*Steel, Inc.*, 54 F. Supp. 2d 1233, 1243-44 (N.D. Ala. 1999) (describing collateral

attack as failure to challenge NPDES permit when the purported deficiency should have been apparent).

Because the issue is not a collateral challenge, this Court can reach it. Federal courts analyze the CWA and EPA rules to understand if a permit or conditions were issued under CWA Section 1342. For example, the Second Circuit concluded that a CWA citizen suit was barred because a narrow interpretation of the permit condition was consistent with the CWA's permit shield while the plaintiff's broader interpretation was not federally enforceable because it implemented a program broader in "scope than that promulgated under the CWA and EPA regulations." *Atl. States Legal Found., Inc. v. Eastman Kodak Co.*, 12 F.3d 353, 359-60 (2d. Cir. 1993) (as amended, *cert. denied* 115 S.Ct. 62, 513 U.S. 811, 130 L.Ed.2d 19) (citing 40 C.F.R. § 123.1(i)(2) and *U.S. Dep't of Energy v. Ohio,* 112 S.Ct. 1627, 1638 (1992)).

*Atlantic States* involved a state-issued CWA permit on wastewater discharges. Congress authorized states to enact standards on wastewater effluent stricter than those mandated by the CWA and federal EPA regulations, but it only authorized enforcement of those stricter standards by states or EPA, not citizens. *Id*. at 358 (citing 33 U.S.C. § 1342(h)). Despite this, the plaintiff argued that it could enforce a condition of Kodak's NPDES permit adopted pursuant to New York law. *Id*. at 359. The court found "the action would fail because New York

8

would be implementing a regulatory scheme broader than the CWA… and such broader state schemes are unenforceable through Section 505 citizen suits." *Id*. at 359-60 (citation omitted). To be enforceable the program must be "promulgated under the CWA and EPA regulations…" *Id*. at 360. The same holds true here.

## II.    ANSWER TO COURT'S ISSUE NO. 2

On March 23, 2021, the PCHB issued an order granting a joint motion for summary judgment filed by the Ports of Seattle and Tacoma, The Northwest Seaport Alliance, and BNSF Railway Company in an appeal of the 2020 ISGP.[1] *Puget Soundkeeper All., et. al. v. Dep't of Ecology*, PCHB No. 19-089c, Order on Summ. J., 2021 WL 1163243 (Mar. 23, 2021). The PCHB held that the plain language of the 2020 ISGP "does not expand coverage beyond those industrial activities specified in the federal regulation" and "Ecology's claim that the 2020 ISGP covers the entire transportation facility is without support from the plain language of the permit." *Id.* at *9. Because the PCHB's ruling addressed the same legal issue before this Court, it should be given preclusive effect under the doctrine of "issue preclusion." If this Court chooses not to give the PCHB's ruling preclusive effect, it should still defer to the PCHB's reasoning, uphold the district

---

[1] SSA Terminals, LLC and the Pacific Marine Shipping Association joined the motion.

court's decision, and interpret the plain language of the ISGP to limit the permit's scope to areas of transportation facilities where industrial activities occur.

Under the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts must give the same preclusive effect to a state-court judgment as another court of that state would give. *Miller v. Cty. of Santa Cruz*, 39 F.3d 1030, 1032 (9th Cir. 1994). The federal common law rules of preclusion also apply to "state administrative adjudications of legal as well as factual issues, even if unreviewed, so long as the state proceeding satisfies the requirements of fairness outlined in *States v. Utah Constr. & Mining*, 384 U.S. 394, 422 (1966)." *Id*. at 1032-33. The fairness requirements of *Utah Construction* are: (1) that the administrative agency act in a judicial capacity; (2) that the agency resolve disputed issues of fact and law properly before it; and (3) that the parties have an adequate opportunity to litigate. *Id.* at 1033.

Hence, the key question here is whether the PCHB decision is entitled to preclusive effect under Washington law. Collateral estoppel, or issue preclusion, bars re-litigation of an issue in a subsequent proceeding involving the same parties. *Christensen v. Grant Cty. Hosp. Dist. No. 1*, 152 Wash.2d 299, 306, 96 P.3d 957, 961 (2004). Washington courts apply a four-part test to determine whether issue

10

preclusion applies. *Id.* at 307.[2] The party seeking preclusion must demonstrate that (1) the identical issue was decided in a prior adjudication; (2) the prior adjudication resulted in a final judgment on the merits; (3) collateral estoppel is asserted against the same party or a party in privity with the same party to the prior adjudication; and (4) precluding re-litigation of the issue will not work an injustice. *Id.* The party against whom the doctrine is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding. *Nielson v. Spanaway Gen. Med. Clinic, Inc.*, 135 Wash.2d 255, 264-65, 956 P.2d 312 (1998).

Before applying issue preclusion to administrative agency decisions, the court must consider three additional factors incorporating the *Utah Construction* requirements: "(1) whether the agency acted within its competence, (2) the differences between procedures in the administrative proceeding and court procedures, and (3) public policy considerations." *Christensen,* 152 Wash.2d at 962; *see also Reninger v. State Dep't of Corr.*, 134 Wash.2d 437, 951 P.2d 782 (1998).

---

[2] Washington courts often use the terms "issue preclusion" and "collateral estoppel" interchangeably. *See, e.g., Christensen.* Here, the Port follows the most recent guidance from the courts and uses the term "issue preclusion."

The PCHB decision meets the four-part test for issue preclusion. First, the
issue decided by the PCHB involving the 2020 ISGP is identical to that before this
Court involving the 2010 ISGP:

> Does the ISGP extend or expand the coverage for transportation facilities
> beyond stormwater associated with "vehicle maintenance (including vehicle
> rehabilitation, mechanical repairs, painting, fueling, and lubrication),
> equipment cleaning operations, airport deicing operations, or which are
> otherwise identified under" 40 C.F.R. § 122.26(b)(14)(i)-(viii), or (ix)-(xi)?

*Puget Soundkeeper All.*, 2021 WL 1163243 at *5, 9. PSA's Issue III in this appeal
is virtually identical:

> Does Washington's Industrial Stormwater General Permit regulate the entire
> footprint of transportation facilities, as opposed to only the portions of
> transportation facilities where vehicle maintenance, equipment cleaning, and
> airport deicing occur?

Dkt. 17 at 13. The Port restated PSA's Issue III as follows in its answering brief:

> Where the ISGP expressly defines the sources subject to the ISGP as the 10
> categories of industrial activities identified in 40 C.F.R. § 122.26(b)(14)(i-ix
> and xi) and does not add any other categories of activities for which
> transportation facilities require coverage, did the district court correctly hold
> that the ISGP unambiguously applies only to those portions of the Port's
> transportation facility identified in 40 C.F.R. § 122.26(b)(14)(viii)?

Dkt. 25 at 14.

PSA had a full and fair opportunity to litigate the scope of coverage issue
before the PCHB. Both PSA and Ecology filed lengthy briefs with the PCHB
opposing the joint motion for summary judgment, including supporting
declarations with numerous exhibits. After the district court granted summary

judgment to the Port on the ISGP scope of coverage issue, and while the joint motion was still pending before the PCHB, the parties filed supplemental briefs with the Board addressing the effect of the district court's ruling. *See Puget Soundkeeper All.*, 2021 WL 1163243 at *1, 2 (list of materials considered by the PCHB in ruling on the summary judgment motion).

PSA may assert that the issue decided by the Board is not identical to that before this Court because the Board interpreted a more recent version of the ISGP. But the relevant language in the 2020 ISGP defining the permit's scope of coverage is virtually identical to that found in the 2010 ISGP that PSA contends regulated the activities on the wharf. Like the 2010 ISGP, the 2020 ISGP defines industrial activity to mean, *inter alia*, "(1) the 11 categories of industrial activities identified in 40 CFR 122.26(b)(14)(i-xi)" and (2) "any facility conducting any activities described in Table 1" of the ISGP. 3-ER-378. The ISGP does not state that Table 1 expresses a broader scope of coverage than EPA. Instead, Ecology clarified that "Table 1 lists the 11 categories of industrial activities identified in 40 CFR 122.26(b)(14)(i-xi) in a different format." *Id*. The fact that the PCHB's ruling was made in the context of a more recent version of the same permit does not negate the preclusive effect of the PCHB's ruling.

Second, the PCHB order is a final judgment on the merits, appealable to superior court pursuant to the Washington Administrative Procedure Act ("APA"),

RCW Ch. 34.05. *See* RCW 43.21B.180; RCW 34.05.570(3). *See also Bock v. State*, 91 Wash.2d 94, 99, 586 P.2d 1173 (1973) (an agency action is deemed "final" when it "imposes an obligation, denies a right, or fixes a legal relationship as a consummation of the administrative process"). A summary judgment ruling constitutes a final judgment on the merits and has the same preclusive effect as a full trial of the issues. *Brownfield v. City of Yakima*, 178 Wash. App. 850, 870, 316 P.3d 529 (2014).

The fact that PSA has appealed the PCHB's decision to the Washington Court of Appeals does not impact the issue preclusion analysis. *See Nielson,* 135 Wash.2d at 264 (an appeal does not negate or suspend the preclusive effect of a judgment); *Lejeune v. Clallam Cty.*, 64 Wash. App. 257, 265-66, 823 P.2d 1144 (1992) (a judgment or administrative order becomes final for res judicata purposes at the beginning, not the end, of the appellate process). *See also Phillips 66 Co. v. Sacks*, 409 F. Supp.3d 972, 989 (W.D. Wash. 2019).[3]

Third, all parties to this Ninth Circuit appeal were also parties before the PCHB. *Puget Soundkeeper All.*, 2021 WL 1163243 at *1.

---

[3] As required by RCW 34.05.514, PSA filed its APA appeal from the PCHB's decision in Thurston County Superior Court. The appeal was transferred to the Division Two Court of Appeals for direct review pursuant to RCW 34.05.518, and subsequently to the Division One Court of Appeals. The appeal is fully briefed, and the parties await scheduling of oral argument.

Fourth, applying preclusive effect to the PCHB decision will not work an injustice. The injustice component is generally concerned with procedural, not substantive, irregularity. *Christensen*, 152 Wash.2d at 309. Applying issue preclusion may be improper where the issue is first determined after an informal, expedited hearing with relaxed evidentiary standards. *Id.* Here, the PCHB decision was made after a formal process, under the Board's rules, and was not irregular in any way. Nor is this a case where a disparity of relief between the two proceedings rendered PSA unlikely to vigorously litigate the issue before the PCHB. *See, e.g., Weaver v. City of Everett,* 194 Wash.2d 464, 474-77, 450 P.3d 177 (2019); *Reninger*, 134 Wash.2d at 453.

The PCHB decision also meets the three additional factors regarding the preclusive effect of administrative agency decisions.

First, the PCHB acted within its competence in granting summary judgment defining the scope of the ISGP's coverage. The PCHB is an independent adjudicatory body created by the Washington legislature to ensure uniform resolution of pollution control controversies by a tribunal possessing special expertise in the field. *See* RCW 43.21B.010; *State ex rel. Martin Marietta Aluminum, Inc. v. Woodward*, 84 Wash.2d 329, 333, 525 P.2d 247 (1974). The PCHB has exclusive jurisdiction over appeals from NPDES permits issued by

15

Ecology. *See* RCW 43.21B.110(1)(c); RCW 43.21B.230; WAC 371-08-315; WAC 371-08-540.

Second, there are no significant differences between court procedures and the PCHB's procedures that would negate the preclusive effect of the PCHB's decision. Hearings before the PCHB are quasi-judicial, and the PCHB engages in *de novo* review of Ecology's decisions. WAC 371-08-485(1). *See Port of Seattle v. Pollution Control Hearings Bd.,* 151 Wash.2d 568, 597-98, 90 P.3d 659 (2004); *Rosemere Neighborhood Ass'n v. Clark Cty*, 170 Wash. App. 859, 873, 290 P.3d 142 (2012). PCHB proceedings are trial-like in nature, involving prehearing briefing, opening statements, presentation of evidence, examination of witnesses, and rulings on the admissibility of evidence. *Port of Seattle,* 151 Wash.2d at 597. *See* WAC 371-08-470, WAC 371-08-475. In addition to its own rules, the PCHB follows superior court civil rules and the rules of evidence as construed by Washington state courts. WAC 371-08-300.

Federal courts have recognized the potentially preclusive effect of PCHB decisions. *See, e.g., Lighthouse Res., Inc. v. Inslee*, No. 3:18-cv-05005-RJB, 2019 WL 1572605 (W.D. Wash. April 11, 2019) (PCHB decisions affirming Ecology's denial of Clean Water Act Section 401 permit were entitled to preclusive effect under doctrine of collateral estoppel); *Friends of the Earth v. Hall*, 693 F. Supp. 904, 920-21 (W.D. Wash. 1988) (collateral estoppel did not apply to PCHB

decision where decision merely resolved state legal issues and did not address Army Corps of Engineers responsibilities under CWA Section 404 and the National Environmental Policy Act).

Finally, considerations of public policy support giving preclusive effect to the PCHB's decision. Doing so would be consistent with the federal courts' "longstanding policy, arising out of concerns of comity and finality, of respecting state court systems for review of administrative decisions." *Miller*, 39 F.3d at 1038.

Even if this Court declines to assign preclusive effect to the PCHB's decision, it is still appropriate for the Court to defer to the PCHB's reasoning.

The legislature designed the PCHB to be *expert*, RCW 43.21B.020 (the hearings board shall consist of three members qualified by experience or training in pertinent matters pertaining to the environment, at least one of whom is a practicing attorney); *independent* of prevailing political winds, RCW 43.21B.020 (members shall be appointed by the governor with the advice and consent of the senate, no more than two members may be of the same political party), RCW 43.21B.030 (staggered six-year terms), RCW 43.21B.060 (restrictions on conduct while a member and upon membership termination); and thus, *consistent and uniform* in its decisions. Washington courts recognize and emphasize the PCHB's expert, independent central adjudicatory role in interpreting and applying the

state's pollution control laws. *See, e.g., Port of Seattle, supra*; *ASARCO, Inc. v. Air Quality Coalition*, 92 Wash.2d 685, 601 P.2d 501 (1979); *Martin Marietta Aluminum, supra*; *City of Seattle v. Dep't of Ecology*, 37 Wash. App. 819, 823, 683 P.2d 244 (1984). "[T]he PCHB, not Ecology, was appointed by the legislature to adjudicate proceedings arising out of Ecology actions." *Port of Seattle,* 151 Wash.2d at 597 (citing *Postema v. Pollution Control Hearings Bd*., 142 Wash.2d 68, 121, 11 P.3d 726 (2000)).

Judicial review of PCHB decisions is also subject to the standards set out in the APA. RCW 43.21B.180; RCW 34.05.570(3). On appeal, a Washington court may reverse a PCHB order "'where the agency has erroneously interpreted or applied the law, the agency's order is not supported by substantial evidence, or the agency's decision is arbitrary and capricious.'" *Snohomish Cty v. Pollution Control Hearings Bd*., 187 Wash.2d 346, 357, 386 P.3d 1064 (2016) (quoting *Postema*, 142 Wash.2d at 77). A court will not overturn a PCHB decision unless it is "clearly erroneous," and the court is "definitely and firmly convinced that a mistake has been made." *Port of Seattle*, 151 Wash.2d at 588. So long as the PCHB "acted honestly and upon due consideration," its decision is not arbitrary and capricious even if the court would have decided the issue differently. *Id.* at 589. *See also Wash. State Dairy Fed. v. State*, 18 Wash. App. 2d 259, 273-74, 490 P.3d 290 (2021).

This Court should consider the PCHB's expertise, its exclusive role in rendering decisions interpreting NPDES permits, and the APA standards of review and defer to the reasoning employed by the PCHB in interpreting the plain language of the ISGP to limit the permit's scope of coverage.

## III.   ANSWER TO COURT'S ISSUE NO. 3

Arguments made in this supplemental brief were either presented to the district court, addressed in briefing or oral argument before this Court, or, if not previously presented, fall within the exception to the general waiver of issues rule and may be considered by this Court.

Issue No. 1:

The issue of whether the Port's residual designation argument constitutes a collateral attack on the ISGP was raised by PSA in the district court and addressed by the parties in summary judgment briefing. *See* PortSSER-23, 24, 30-33; 3-ER-603, 605; PortSSER-10, 16-18; PortSSER-3, 6-7; 1-PortSER-14-15. The district court referenced the collateral attack argument in its order requesting supplemental briefing by Ecology regarding the ISGP interpretation. 3-ER-605. However, the court noted that "the threshold issue is interpretation of the [ISGP]" and rested its eventual ruling granting the Port summary judgment entirely on its interpretation of the plain language of the permit. *Id.*

19

PSA did not raise the collateral attack argument in its Ninth Circuit opening brief or designate it as an issue on appeal. Accordingly, the issue was not addressed in the Port's answering brief. PSA did include this argument in its response to an amicus brief. Dkt. 39 at 6-7. The issue was also addressed at oral argument, in response to this Court's questions.

Issue No. 2:

The PCHB issued its decision after the district court granted the Port summary judgment. Thus, the issue of whether preclusive effect, or deference, should be given to the PCHB decision was not before the court when it ruled on the Port's motion.

The district court briefly discussed the PCHB decision in its ruling granting SSA/SSAT summary judgment, in the context of rejecting PSA's argument that summary judgment should not be granted because the scope of the 2020 permit was unresolved. 1-ER-30. The PCHB decision was issued after briefing was complete on SSA's motion, but before the district court's ruling on that motion. 1-ER-30 n.3.[4] The district court noted that PSA had not amended its fourth amended complaint to include allegations arising under the 2020 ISGP, and that, in any event, the PCHB

---

[4] SSA and the Port filed a joint statement of additional authority notifying the district court of the PCHB decision the day after it was entered. 1-ER-30 n.3; 4-SERSSA-870-892.

had adopted the district court's reasoning that the Wharf was not within the ISGP's scope of coverage. 1-ER-30.

In responding to PSA's opening brief in this appeal, the Port did not assert that the PCHB decision should be given preclusive effect. However, in both its answering brief and at oral argument, the Port pointed to the PCHB decision and its adoption of the district court's reasoning as further support for upholding the district court's grant of summary judgment. Dkt. 25 at 33, 39-40.

Potential waiver:

Although neither party specifically addressed in their prior briefing the issues raised by this Court in its order requesting supplemental briefing, the Court may nevertheless raise the issues *sua sponte* and consider the parties' arguments.

The Court of Appeals "will not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief." *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 738 (9th Cir. 1986). *See also Monzon v. City of Murrieta*, 978 F.3d 1150, 1164 (9th Cir. 2020). The Court may make an exception to the general waiver rule "(1) for 'good cause shown' or 'if a failure to do so would result in manifest injustice,' (2) 'when [the issue] is raised in the appellee's brief,' or (3) 'if the failure to raise the issue properly did not prejudice the defense of the opposing party.'" *United States v. Ullah*, 976 F.2d 509, 514 (9th Cir. 1992). Courts have discretion to entertain an argument that was not raised by the parties. *Id.*

21

The third exception applies here. Even where an issue is not raised in the parties' briefs, courts regularly find that the parties' opportunity to address an issue in supplemental briefing, and/or at oral argument, removes any potential prejudice. *See, e.g.*, *United States v. Green*, 940 F.3d 1038, 1041-42 (9th Cir. 2019) (considering issue not raised in initial briefing because fully briefed in supplemental briefs); *Sharemaster v. U.S. Sec. & Exch. Comm'n*, 847 F.3d 1059, 1070-71 (9th Cir. 2017) (no waiver where issue addressed at oral argument and in supplemental briefs); *U.S. v. Cotterman*, 709 F.3d 952, 959-60 (9th Cir. 2013) (no prejudice where parties addressed issue in court-requested supplemental briefs); *Ervco, Inc. v. Texaco Ref. and Mktg., Inc. v.*, 428 Fed. Appx. 725, 727-28 (2011) (no prejudice because both parties filed supplemental briefs on the issue). *See also Clements v. Airport Auth. of Washoe Cty*, 69 F.3d 321, 329-330 (9th Cir. 1995) (court may raise issue preclusion *sua sponte*, no waiver where court requested supplemental briefing on preclusive effect of state court decision).

## CONCLUSION

The Port of Tacoma respectfully requests that this Court affirm the judgments of the district court granting summary judgment to the Port and to SSA and dismissing PSA's claims.

Date:  September 18, 2023.

**TUPPER MACK WELLS PLLC**

*s/ Bradford Doll*
*s/ Lynne M. Cohee*
*s/ James A. Tupper*
*s/ Hayley Ventoza*
Bradford Doll, WSBA No. 38479
Lynne M. Cohee, WSBA No. 18496
James A. Tupper. WSBA No. 16873
Hayley Ventoza, WSBA No. 46306
Tupper Mack Wells PLLC
2025 First Avenue, Suite 1100
Seattle, WA 98121
Telephone: (206) 493-2300

*Attorneys for Appellee/Cross-Appellant*
*Port of Tacoma*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number(s)** <u>21-35881; 21-35899; 22-35061</u>

I am the attorney or self-represented party.

**This brief contains** __4,990__ **words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ X ] complies with the length limit designated by court order dated <u>8/18/2023</u>.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** <u>s/*Bradford Doll*</u>    **Date**  <u>9/18/2023</u>

A-1